Case No. SACV 10-1237 DOC (VBKx)
Consolidated with: 10-1794 DOC (VBKx)    Date: July 8, 2011

Title: RELENTLESS, LLC, ET AL. v. BASIN MARINE, INC., ET AL.
Consolidated with: THE STANDARD FIRE INSURANCE COMPANY v. RELENTLESS, LLC, ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT              NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S THE STANDARD FIRE INSURANCE COMPANY'S MOTION TO COMPEL APPRAISAL AND TO STAY ACTION PENDING APPRAISAL AND DENYING WITHOUT PREJUDICE BASIN MARINE'S MOTION FOR SUMMARY JUDGMENT

      Before the Court is Plaintiff the Standard Fire Insurance Company's Motion to Compel Appraisal and to Stay Action Pending Appraisal ("Motion to Compel") (Docket 19) and Defendant Basin Marine's Motion for Summary Judgment ("MSJ") (Docket 18). The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. The Court has considered the moving, opposing, and replying papers and GRANTS IN PART AND DENIES IN PART the Motion to Compel. The early-filed MSJ is DENIED WITHOUT PREJUDICE.

    **I.**    **Background**

      On October 12, 2009, Plaintiff The Standard Fire Insurance Company ("Standard") issued an insurance policy (the "Policy") to Defendant Relentless LLC ("Relentless") for a sailing yacht known as the Dauntless. The Policy covers the "reasonable" costs of repair up to $650,000 and further

provides that if the vessel "needs repair after a covered loss, we will have the option of paying the reasonable costs of repairs in accordance with a) the manufacturer's specifications; or b) generally accepted repair practices." *See* Complaint, Ex. A.

On January 19, 2010, the Dauntless was damaged in Defendant Basin Marine ("Basin")'s shipyard while undergoing routine maintenance and repairs. The parties do not dispute that the Policy covers the incident, but disagree as to the cost to repair the ship following the casualty. Standard contends that it has paid more than the reasonable cost to repair the Dauntless by retaining surveyors and experts and tendering $424, 263.59. Relentless, however, paid for repairs without Standard's consent, and contends that Standard should cover the $667,724 it paid. For this reason, Standard requested an appraisal from Relentless to determine the amount owed under the Policy, but Relentless allegedly refused to participate in the appraisal. Standard maintains that an appraisal is required under the Policy.

The two actions–one as to liability and one as to the insurance issue--were consolidated by the Court on January 31, 2011 (Docket 17). Two motions are addressed in this Order: the first, a Motion to Compel Appraisal and to Stay Action Pending Appraisal filed by Standard, and the other, a Motion for Summary Judgment filed by Basin.

## II. Motion to Compel Appraisal and Stay

### A. Appraisal

An agreement to conduct an appraisal contained in an insurance policy is binding, and considered in the same way as an arbitration clause. *Louise Gardens of Encino Homeowners' Ass'n Inc. v. Truck Ins. Exch., Inc.*, 82 Cal. App. 4th 648, 658 (2000); *see also Unetco Indus. Exch. v. Homestead Ins. Co.*, 57 Cal. App. 4th 1459, 1465-66 (1997) ("Arbitration–and similarly appraisal . . . is a favored means of dispute resolution.") (internal citations omitted). In this case, the Policy's language is clear, as it provides for an appraisal should the parties disagree about the amount of loss. *See id.* Accordingly, the appropriateness of an appraisal, pursuant to the Policy, is clear, and Relentless fails to suggest otherwise. Furthermore, the purpose of an appraisal is to resolve exactly what is at issue in this case: a dispute over the amount of the loss. Indeed, the Policy requires Standard to pay for "the reasonable cost of repair or replacement of damages or stolen property" but that if a loss is covered, Standard "will pay the lesser of: 1) the Amount of insurance for [the] yacht or dinghy [in this case $650,000] or 2) the amount for which [the] yacht or dinghy can reasonably be repaired to its condition just prior to the loss." *See* Complaint, Ex. A. Because the parties dispute what a reasonable repair should cost, appraisal is appropriate.

Both parties nonetheless discuss the seemingly endless arguments they have had over the appraisal process. According to Standard, it advised Relentless of its concerns throughout the process, but Relentless decided on its own to have the boat sent to Maine and repaired without regard to

potential cost.  Motion to Compel, 3-4.  Standard further contends that it twice demanded appraisal of Relentless, pursuant to the Policy, but that Relentless continued to insist, as it does in its Opposition, that any appraisal be conducted by average adjustors, rather than marine surveyors.

After reviewing the arguments presented by both sides, the Court agrees with Standard that an appraisal conducted by marine surveyors–who, unlike average adjustors, are experienced with this precise type of "private pleasure yacht" repair– is appropriate.  The Court is especially persuaded by Standard's evidence that such average adjustor appraisals are virtually unheard of in the private yacht appraisal industry, but are instead used for *commercial* marine casualties.   Declaration of Kenneth D. Moore ("Moore Decl."), ¶ 5.  By contrast, marine surveyors specialize in determining the cause, nature, and extent of damages attributable to a marine casualty and are experts at evaluating damage and repair costs for "private pleasure yachts" like the Dauntless.  *See* Moore Decl. ¶ 3.

The Court further agrees with Standard that the appraisal must be limited only to the factual questions of the amount of the loss; it would be inappropriate to have an appraisal resolve questions of law or policy interpretation.  *See Jefferson Ins. Co., v. Superior Court of Alameda County*, 3 Cal. 3d 398, 403 (1970) ("'The function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy.'") (internal quotations omitted).  Relentless appears to argue both for and against this idea; at times it argues that the appraisal cannot resolve the law but at other points requests that it do exactly that.  *See* Opp'n at 17-20.  Regardless of its inconsistent requests, the Court clarifies that the appraisal does not establish legal questions, which will remain intact for the Court to determine at a later date.  Accordingly, the "legal presumption" that Relentless claims exists in favor of finding actual costs to be reasonable–even if the Court were to agree that it exists, which it does not do in this Order–is irrelevant for purposes of the appraisal.

Finally, the Court rejects Relentless's arguments of "unclean hands" or estoppel, because, pursuant to the contract, the appraisal must happen prior to such assertions.  *See, e.g.*, *Enger v. Allstate Ins. Co.*, 682 F. Supp. 2d 1094, 1099 (E.D. Cal.2009) *aff'd*, 2010 WL 5423566 (9th Cir. Dec. 28, 2010); *see also Goldberg v. State Farm Fire & Cas.*, 2002 WL 768893 (C.D. Cal. 2002) (finding that the "appraiser [is to have] the first opportunity to address the valuation issue" and also noting that a plaintiff's "failure to demand an appraisal precluded its claims of bad faith").

Therefore, the Court Orders the parties to proceed with an appraisal with appraisers and an umpire with at least five years of experience in the industry.  The appraisers and umpire must make a factual determination as to the amount of loss and must not address coverage or legal issues.

### B.     Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163 (1936). Whether to stay an action depends on a court's exercise of judgment in balancing potentially competing interests. *Id.* (citing *Kan. City S. Ry. v. United States*, 282 U.S. 760, 763 (1931); *Enelow v. N.Y. Life Ins. Co.*, 293 U.S. 379, 382 (1935)).

Among those interests to be weighed are "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Where separate proceedings relate to a case, "[a] trial court may . . . find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case . . . and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979).

Because the Court deems appraisal necessary, it Orders that the appraisal occur within the next thirty (30) days. The Court therefore does not find staying the case to be necessary, given that the appraisal will happen quickly. Therefore, the Court does not stay this case in entirety. Standard's Motion to Stay is therefore DENIED.

### III. Motion for Summary Judgment

The Scheduling Conference Order established a motion cut-off date in March of 2012. This Court, as it informed the parties, does not indulge early summary judgment motions. Therefore, because this Motion was early-filed, the Court DENIES the Motion without prejudice.

### IV. Disposition

For the reasons stated above, the Court hereby GRANTS IN PART AND DENIES IN PART Standard's Motion to Compel Appraisal and to Stay.

The Court DENIES WITHOUT PREJUDICE Basin's Motion for Summary Judgment.

The Court hereby:

(1) Orders an appraisal to be conducted by appraisers and an umpire with a minimum of five-years experience with marine surveying;

(2) Orders that the appraisal occur within the next thirty (30) days; and

(2) The appraisal must address only the factual issue of the amount of loss, but not

insurance policy or legal issues.

      The Clerk shall serve this minute order on all parties to the action.